THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY MAUGER, on his own
behalf and on behalf of those
similarly situated,

    Plaintiff,

v.                                          CASE NO.: 8:21-cv-01161-TPB-AAS

MY ENERGY MONSTER, INC., a
Florida Profit Corporation, and
RICHARD ORLANDI,
Individually,

    Defendants.
_____/

**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENTAGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

Named Plaintiff, JEFFREY MAUGER ("MAUGER"), individually and on behalf of the Opt-in Plaintiffs who have joined this lawsuit ("Plaintiffs"), and MY ENERGY MONSTER, INC. ("MY ENERGY") and RICHARD ORLANDI ("ORLANDI") ("Defendants") (all parties collectively referred to as the "Parties"), jointly request that this Court approve the Parties' settlement of the above-captioned matter. Plaintiff's action and claims arise under the Fair Labor Standards Act ("FLSA") and the Parties seek this Court's approval of the settlement reached. The Parties' executed FLSA Settlement Agreement and Release (the "Settlement Agreement") is attached as **Exhibit A**.

    **I.**    **Relevant Procedural and Factual History**

On May 13, 2021, Jeffrey Mauger ("Mauger") filed an action entitled *Mauger, et al. v. My Energy Monster, Inc. and Richard Orlandi*, No. 8:21-cv-01161-TPB-AAS, in the United States District Court for the Middle District of Florida (the "Action"). [Doc. 1] In the Action, Mauger alleged that My Energy Monster, Inc. and Richard Orlandi ("Defendants") violated the FLSA by failing to pay him, and others similarly situated to him, proper overtime wages for all hours worked over 40 in a workweek. Mauger sought damages, attorneys' fees and costs, on his own behalf and on behalf of other current and former spray foam technicians and spray foam technician crew leaders. On July 1, 2021, Defendants filed their Answer to the Complaint, denying the claims and allegations in the Complaint and denying that they had violated the FLSA. [Doc. 15].

On August 6, 2021, Plaintiff filed his Motion to Conditionally Certify FLSA Collective Action and to Facilitate Notice to Potential Class Members ("Motion"). On August 30, 2021, Defendants filed their response to Plaintiff's Motion indicating that they did not oppose Plaintiff's Motion for notice purposes, but requesting modifications to Plaintiff's proposed Class Notice and Consent to Become an Opt-In Plaintiff. Plaintiff agreed to Defendants' proposed changes.

On September 10, 2021, the Court entered an Order (Doc. 33) granting Plaintiff's Motion which allowed Plaintiff to send notice to the following putative class:

> All current and former Spray Foam Technicians (including crew leaders), who were/are employed by Defendants, My Energy Monster, Inc. ("My Energy") and Richard Orlandi ("Orlandi") (hereinafter referred to collectively as

"Defendants") in Florida, and who were/are paid on a salary or piece rate basis, within the last (3) years prior to the filing of this Motion.

Subsequent to the Court's Order granting Plaintiff's Motion, Notice of the Action was sent to sixty-seven (67) current and former employees of Defendants. The deadline for putative class members to join this Action was on November 26, 2021 ("Claims Deadline"). Six (6) putative collective members ("Opt-In Plaintiffs") submitted consents to join the Action before the expiration of the Claims Deadline and remain in the Action. For settlement purposes only, Defendants stipulate to final certification in this case and do not oppose that Named Plaintiff and the six (6) opt-in Plaintiffs are similarly situated.

During the course of the Action, the Parties engaged in fact investigation and informal discovery, and Defendants provided information and voluminous records related to Plaintiff and the Opt-In Plaintiffs and the claims and defenses.

This Court ordered the Parties to attend mediation, which initially took place on February 7, 2022, with the Parties continuing negotiations after such date in an attempt to resolve all issues. Utilizing data provided by Defendants and information provided during the Parties' respective fact investigations, the Parties' developed their own, respective assessments of potential damages in the case, for the purposes of facilitating negotiations. The Parties engaged in arms-length negotiations over the course of more than a month with the assistance of the mediator and were ultimately able to reach an agreement to settle the claims in this Action on March 14, 2022.

  II.  <u>**Legal Principals**</u>

In FLSA matters that have been conditionally certified, Courts may approve the Parties' settlement before a final certification decision[1] has been made. *Mcguire v. Intelident Sols., LLC*, No. 818CV02995T23SPF, 2020 WL 10506642, at *3 (M.D. Fla. Sept. 2, 2020), report and recommendation adopted, No. 8:18-CV-2995-T-23SPF, 2020 WL 10506644 (M.D. Fla. Sept. 28, 2020) (approving the parties' settlement during stage 1 of conditional certification and specifically holding that "a final certification decision is not required."). The standard used in deciding whether a settlement is fair and reasonable in collective actions is the same standard as in an FLSA individual action. *Id.*

Pursuant to the case law regarding settlement of FLSA claims, there are two ways in which compromised claims under the FLSA can be settled and released by employees. First, section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. §216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*; *see also Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.,* 163 F.2d 960, 961 (5th Cir. 1947). In detailing the

---

[1] Defendants also stipulate to final approval for settlement purposes only in this matter.

circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354 (footnote omitted).

If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *see also Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1226 (M.D. Fla. 2009). "If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable [and] [r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Bonetti*, 715 F. Supp. 2d at 1227. Where the plaintiff's attorneys' fee is agreed upon separately without regard to the amount paid to the plaintiff, "then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to her attorney, the Court will approve the

settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Id*. at 1228, *see also Anderson v. Cuenca Safety and Crime Prevention, Inc*., No. 8:13–cv–1500–T–33AEP, 2013 WL 6894534, *1, FN 1. (M.D. Fla. Dec. 31, 2013).

### III.     The Parties' Settlement

The settlement of the instant action involves a situation in which the Court may approve the Parties' settlement to resolve and release Plaintiffs' FLSA claims against Defendants. During the litigation and settlement of this action, the Parties were represented by experienced counsel and attended mediation with an experienced mediator approved by this Court.

The Parties agree that the instant action involves multiple disputed issues. Specifically, Plaintiffs allege that they were employed by MY ENERGY and ORLANDI as an individual employer under the FLSA, which ORLANDI vehemently disputes. Plaintiffs allege that they were not paid for all hours worked, which resulted in unpaid overtime hours. Defendants deny owing Plaintiffs overtime under the FLSA and assert that they have been paid appropriately for all hours worked. Even if Plaintiffs could establish entitlement to overtime pay, Defendants dispute the number of hours alleged and/or whether Defendants knew or should have known that Plaintiffs worked such alleged unpaid hours. The Parties also dispute whether a two (2) or three (3) year statutory period applies in this case and whether Plaintiffs are entitled to liquidated damages.

Defendants provided Plaintiffs' counsel with voluminous pay records and any available time records related to Named Plaintiff and the Opt-In Plaintiffs. Using the records, Plaintiffs' counsel calculated the alleged damages that would be due under various scenarios using "averages" of total hours worked. The Parties attempted a resolution of all claims prior to mediation, but were unable to reach an agreement. The Parties initially attended mediation on February 7, 2022, which was extended so that the Parties could continue negotiations and so that Defendants could obtain additional records to dispute the hours alleged by Plaintiffs.

Defendants were mindful of the costs and risks of litigation and were contemplating the need initiate bankruptcy proceedings. Named Plaintiff was also mindful of the risks associated with litigation, including decertification, Defendants' exemption defense, and the inability to prove the hours alleged due to the lack of time records in this case. Named Plaintiff was also aware of the potential risk of Defendants filing for bankruptcy, which could result in Plaintiffs receiving no recovery whatsoever. As such, through the assistance of counsel and the mediator, the Parties finally reached an agreement on March 14, 2022, for a total of $40,000.00, inclusive of $17,566.00 in damages to Plaintiffs, $2,500.00 as a service payment and consideration for a general release to Named Plaintiff, and $19,550.00 in attorneys' fees and costs (including the cost of settlement administration). Defendants have agreed to pay this amount in four (4) equal installments of $10,000.00 and agree to final default judgment should they default on these terms. *See* Exhibit A. The allocation of settlement funds are explained as follows:

### A.     <u>Settlement Allocation to Named Plaintiff and the Opt-In Plaintiffs</u>

After the close of the Claims Deadline, Plaintiffs were in possession of what they believed to be all of the records. Using the available records, Plaintiffs calculated alleged damages for each individual Plaintiff. Defendant provided most pay records, but very limited time records for Plaintiffs. Of those provided, 43-45 hours appeared to be the most appropriate <u>average</u> number of hours worked per week. At mediation, it was also discovered that the initial damages[2] calculated included several workweeks during which one or more Plaintiffs did not perform work for Defendants, which resulted in a reduction of the initial damages assessed. The Parties ultimately resolved Plaintiffs' alleged overtime claims for a total of $17,566.00, which is the amount calculated using each Plaintiffs' available pay records and an average of forty-five (45) hours worked per week. Defendants have agreed to pay this amount as part of the Parties' settlement, but deny owing Plaintiffs any wages whatsoever, including wages under the FLSA.

### B.     <u>Releases</u>

Named Plaintiff also will provide a general release of all claims against Defendants in exchange for a Service Award, in recognition of the assistance he provided in obtaining the overall settlement for the Opt-In Plaintiffs. Named Plaintiff came forward with this Action nearly a year ago, and has zealously assisted counsel in this Action to include several conferences, mediation, and assisting with negotiations before ultimately reaching an

---

[2] At the time of filing answers to Court's Interrogatories there were more limited records available and the calculations included very rough estimates.

agreement more than one month after mediation began. On the other hand, by accepting the settlement funds allocated to them under the Settlement Agreement, the Opt-In Plaintiffs only agree to a limited release to only include federal and state wage and hour claims. *See* Release Provisions at Exhibit A, ¶4. The releases and service award agreed to here are acceptable and have been approved by this Court. *See Mcguire*, 2020 WL 10506642, at *5 (approving agreement wherein named plaintiff executed a general release and opt-in plaintiffs executed limited releases).

    C.    **Attorneys' Fees and Litigation Costs**

The Parties' settlement includes a total of $19,550.00 allocated as attorneys' fees and costs, including the cost of settlement administration. The amount set aside for attorneys' fees and costs was negotiated separately and without regard to the amount paid to Plaintiffs and reflects a downward departure from the fees and costs actually incurred in this matter. In fact, the attorneys' fees incurred to date total more than $24,000.00, exclusive of costs (including expenses related to settlement administration) and will continue to accrue through dismissal of this Action. As such, the attorneys' fees and costs agreed to here are reasonable under the circumstances.

**IV.**    **Conclusion**

In light of these risks, including potential bankruptcy of Defendants, after exchanging records and engaging in numerous settlement discussions, the Parties believe

this is a reasonable compromise of the numerous disputed issues in this case. The Parties, through their attorneys, voluntarily agreed to the settlement terms of their settlement during negotiations. All Parties were advised and represented by experienced counsel throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties, which represents a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA, and dismiss the instant action with prejudice.

Respectfully submitted this 29th day of March, 2022.

| /s/ *Kimberly De Arcangelis* | /s/ *James S. Myers* |
|---|---|
| Kimberly De Arcangelis, Esquire | James S. Myers, Esq. |
| Florida Bar No.: 0025871 | Florida Bar No.: 64246 |
| MORGAN & MORGAN, P.A. | McElroy, Deutsch, Mulvaney & Carpenter, LLP |
| 20 North Orange Avenue, Suite 1600 | Fifth Third Center |
| Orlando, Florida 32801 | 201 East Kennedy Blvd., Suite 815 |
| Telephone (407) 420-1414 | Tampa, Florida 33602 |
| Facsimile (407) 245-3383 | (813) 285-5520 – Phone |
| Email: kimd@forthepeople.com | Email: jmyers@mdmc-law.com |
| *Attorney for Plaintiffs* | *Attorney for Defendants* |